Jayne A. HOELL, Petitioner-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION and Narada
Production, Incorporated, Respondents-Respondents.

Court of Appeals

*No. 93–1957. Submitted on briefs February 4, 1994.—Decided
August 3, 1994.*

(Also reported in 522 N.W.2d 234.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Timothy S. Clark* of *Koch, Koch, Clark & Goldner* of Elm Grove.

On behalf of the respondent Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David C. Rice*, assistant attorney general.

On behalf of the respondent Narada Production, Incorporated, the cause was submitted on the brief of *David B. Kern* and *Carmella A. Huser* of *Quarles & Brady* of Milwaukee.

Before Brown, Nettesheim and Snyder, JJ.

SNYDER, J.   In this sex discrimination case we are presented with the question of whether the "in part" test applied by our supreme court to mixed motive discharges under municipal and government employment laws also applies in private sector discrimination cases arising out of the Wisconsin Fair Employment Act (WFEA), §§ 111.31-.395, STATS.[1] We hold that it does and therefore formally adopt the "in part" test (or "mixed motive" test) for discrimination cases under the WFEA.

Jayne A. Hoell began her employment with Narada Production, Incorporated on December 27, 1988 as manager of its accounting department. In June of 1989, Hoell informed her supervisor, Wendall Doman, that she was pregnant and she intended to take a maternity leave in February of 1990. On October 20, 1989, Narada terminated Hoell's employment. Hoell subsequently filed a sex discrimination complaint against Narada with the Department of Industry, Labor and Human Relations (DILHR).

---

[1] *See Wisconsin Dep't of Employment Relations v. WERC*, 122 Wis. 2d 132, 142-44, 361 N.W.2d 660, 665 (1985); *Muskego-Norway Consol. Schs. Joint Sch. Dist. No. 9 v. WERB*, 35 Wis. 2d 540, 562, 151 N.W.2d 617, 628 (1967).

Upon investigating the matter, DILHR issued an initial determination finding probable cause to believe that Narada violated the WFEA. A hearing was then held on the issue wherein Narada disputed that Hoell's pregnancy was a motivating factor behind its decision to terminate her. Doman testified that Hoell was terminated because of her poor job performance, extreme tension within the accounting department and Hoell's inability to properly supervise the employees in her department.

After hearing all of the evidence, the administrative law judge (ALJ) concluded that Narada terminated Hoell in part because she was pregnant and therefore discriminated against Hoell as a matter of law. However, the ALJ did not make any findings regarding whether other reasons existed for Hoell's termination or whether Narada would have terminated Hoell absent her pregnancy. The ALJ ordered Narada to cease and desist from discriminating against Hoell, reinstate her, give her back pay and interest, and pay her attorney's fees and costs.

Narada petitioned for review of the ALJ's decision with the Labor and Industry Review Commission (LIRC). LIRC affirmed the ALJ's finding that Hoell's pregnancy was a factor in the termination of her employment. However, LIRC made an additional finding that Hoell was terminated in part for reasons unrelated to her pregnancy and that she would have been terminated even if she were not pregnant. Based upon its additional findings of fact, LIRC concluded that this was a "mixed motive" case and limited Hoell's award to a cease and desist order and reasonable attorney's fees and costs. In making its remedial order, LIRC considered the mixed motive test as interpreted under analogous federal fair employment law. *See* Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 (1994) ("Title VII").

Hoell then filed a petition for judicial review with the circuit court, which affirmed LIRC's decision in an order dated June 11, 1993. Hoell appeals the order arguing that (1) she was denied due process as a result of LIRC's new finding that her employment was terminated in part because of job performance, (2) she was denied due process as a result of LIRC's modification of the ALJ's remedies, (3) LIRC erred in concluding that she failed to provide substantial evidence of the adequacy of her work at Narada, and (4) LIRC erred by applying the mixed motive test to cases arising under the WFEA. We are unpersuaded by Hoell's arguments and affirm LIRC's decision.

## MIXED MOTIVE TEST

The threshold issue in this case is whether the mixed motive test is applicable to discrimination claims under the WFEA and, if so, what remedies are available. A mixed motive case is one in which the adverse employment decision resulted from a mixture of legitimate business reasons and prohibited discriminatory motives. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 n.12 (1989). The determination of the remedies available under the WFEA is a question of law and we are not bound by LIRC's interpretation. *Marten Transp., Ltd. v. DIHLR*, 176 Wis. 2d 1012, 1018, 501 N.W.2d 391, 394 (1993).

In modifying the remedies ordered by the ALJ, LIRC applied the mixed motive test as interpreted under federal Title VII cases. *See* Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-5(g)(2)(B) (1994). As added by the Civil Rights Act of 1991, "an unlawful

employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."[2] 42 U.S.C. § 2000e-2(m) (1994). However, if the employer can demonstrate that it would have taken the same action in the absence of the impermissible motivating factor, the plaintiff may be awarded declaratory relief, injunctive relief, and attorney's fees and costs, but not monetary damages or reinstatement. 42 U.S.C. § 2000e-5(g)(2)(B).[3]

LIRC summarized the appropriate remedies in a mixed motive test as follows:

> [I]f an employe is terminated solely because of an impermissible motivating factor, the employe normally should be awarded a cease and desist order, reinstatement, back pay, interest, and attorney's

---

[2] The Civil Rights Act of 1991, 42 U.S.C. § 2000e-5(g)(2)(B) (1994), partially overruled *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), which held that if the plaintiff proved that a prohibited criterion was a motivating factor, the defendant could avoid liability completely by proving by a preponderance of the evidence that it would have made the same decision regardless of consideration of the forbidden characteristic. *Id.* at 244-45.

[3] 42 U.S.C. § 2000e-5(g)(2)(B) states in relevant part:

On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

(i)   may grant declaratory relief, injunctive relief . . . and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and

(ii)   shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A) [back pay].

fees under the Wisconsin Fair Employment Act. If an employe is terminated in part because of an impermissible motivating factor and in part because of other motivating factors, but the termination would <u>not</u> have occurred in the absence of the impermissible motivating factor, the Commission has the discretion to award some or all of the remedies ordinarily awarded. Finally, if an employe is terminated in part because of an impermissible factor and in part because of other motivating factors, <u>and</u> the termination would have taken place in the absence of the impermissible motivating factor, the employe should be awarded only a cease and desist order and attorney's fees. [Citations omitted.]

Because LIRC found that other nondiscriminatory factors existed and Hoell would have been terminated regardless of her pregnancy, it limited her remedies to a cease and desist order and attorney's fees.

The WFEA does not specifically address the mixed motive situation at issue here. In *Marten Transport*, our supreme court recognized that Title VII and the WFEA serve identical purposes and therefore it is appropriate to consider federal decisions in interpreting the WFEA. *Marten Transport*, 176 Wis. 2d at 1020, 501 N.W.2d at 395. However, we realize that we are not bound by federal law or decisions regarding employment discrimination and we will not follow them if they conflict with the intent of the WFEA. *Id.* at 1020-21, 501 N.W.2d at 395.

Our supreme court previously recognized the question of whether the "in part" test applies in claims arising under the WFEA without deciding it. *See Federated Rural Elec. Ins. Co. v. Kessler*, 131 Wis. 2d 189, 192-93, 388 N.W.2d 553, 554 (1986). However, in cases arising under the municipal and state employment relations laws, the supreme court adopted the "in part"

test with respect to discrimination based on antiunion animus. *Wisconsin Dep't of Employment Relations v. WERC*, 122 Wis. 2d 132, 142-44, 361 N.W.2d 660, 665 (1985); *Muskego-Norway Consol. Schs. Joint Sch. Dist. No. 9 v. WERB*, 35 Wis. 2d 540, 562, 151 N.W.2d 617, 628 (1967). In *Employment Relations*, the court stated that in mixed motive cases, "evidence that legitimate reasons contributed to the employer's decision to discharge the employee can be considered . . . in fashioning an appropriate remedy." *Employment Relations*, 122 Wis. 2d at 143, 361 N.W.2d at 666.

Based upon our supreme court's recognition of the validity of the mixed motive test in *Muskego-Norway* and *Employment Relations* and its acknowledgment that legitimate reasons may be considered when fashioning an appropriate remedy, we consider it logical to extend the mixed motive test to cases arising out of the WFEA. We further consider LIRC's summary of the appropriate remedies in mixed motive cases to be reasonable based on federal fair employment law, and we adopt it here.

Hoell argues that the mixed motive test should not be applied in cases arising out of the WFEA because to do so would openly invite employers to discriminate and hide behind pretextual defenses, thereby defeating the legislature's intent in enacting the WFEA. However, Hoell offers no explanation why the mixed motive test is appropriate in discrimination cases involving public sector employees but not private sector employees. We conclude that there is no rational basis for distinguishing between the public and private sectors in terms of the test to be applied to discriminatory acts.

## APPLICATION OF MIXED MOTIVE TEST

In this case, LIRC found that Narada terminated Hoell because of her pregnancy as well as other permissible motivating factors and that Hoell would have been terminated even if she were not pregnant. On appeal, Hoell contends that she was denied due process as a result of these additional findings by LIRC and that there is no substantial evidence in the record to support LIRC's finding that she was terminated due to a permissible, motivating factor.

When an appeal is taken from a circuit court order on administrative review, we review the decision of the agency, not the circuit court. *See MPI Wis. Machining Div. v. DILHR,* 159 Wis. 2d 358, 365-66, 464 N.W.2d 79, 81-82 (Ct. App. 1990). We must affirm LIRC's findings of fact if they are supported by any credible and substantial evidence in the record, even if they are contrary to the great weight and clear preponderance of the evidence. *West Bend Co. v. LIRC,* 149 Wis. 2d 110, 117-18, 438 N.W.2d 823, 827 (1989); *see also* § 227.57(6), STATS. We cannot substitute our judgment for that of the commission regarding the credibility of witnesses or the weight to be accorded to the evidence supporting factual findings. *West Bend Co.,* 149 Wis. 2d at 118, 438 N.W.2d at 827.

Hoell first argues that she was denied her due process right to a fair hearing and the protections under the WFEA "[a]s a direct result of the LIRC substituting its decision for that of the administrative law judge." We disagree. In this case, LIRC expressly agreed with the ALJ's determination that Hoell's pregnancy was a factor in the termination of her employment. However, LIRC concluded that Hoell was also terminated for reasons related to her poor job per-

formance and would have been terminated even if she were not pregnant. This constitutes an additional finding, not a substituted finding, because the ALJ never decided the issue of whether there were other reasons for Narada's decision to terminate Hoell or if she would have been terminated even if she were not pregnant.[4]

Hoell also contends that LIRC erred by ignoring the ALJ's credibility determination that Hoell was more credible than Doman. Here again, it is important to note that LIRC distinguished between the pregnancy factor and other nondiscriminatory factors. LIRC expressly deferred to the ALJ's decision that Hoell's pregnancy was a factor based primarily on the ALJ's credibility determination on this issue. However, LIRC concluded that Doman was more credible in terms of Hoell's job performance and the other reasons why Hoell was terminated. Therefore, we do not believe that LIRC substituted its credibility determination.

Further, even if LIRC did substitute its credibility determination for that of the ALJ, this would not necessarily constitute a due process violation. LIRC is expressly empowered to reject the ALJ's recommendations in rendering a final decision, provided that it consults the ALJ to determine his or her impressions of the credibility of witnesses and explains in a memorandum opinion why it disagreed with the ALJ. *Hamilton v. DILHR*, 94 Wis. 2d 611, 621, 288 N.W.2d 857, 862 (1980). Hoell makes no showing that these requirements have not been met, and the record indicates that

---

[4]We further note that even had LIRC substituted its findings for that of the ALJ, this would not constitute a due process violation. The ultimate responsibility for finding facts is on the commission, not on the administrative law judge. *See Falke v. Industrial Comm'n*, 17 Wis. 2d 289, 294-95, 116 N.W.2d 125, 128 (1962); *see also* § 111.39(5)(b), STATS.

the commission consulted with the ALJ regarding credibility.

Hoell next argues that there was insufficient evidence for LIRC to find that other nondiscriminatory factors played a part in her termination. The question of an employer's motivation presents a question of ultimate fact. *See St. Joseph's Hosp. v. WERB*, 264 Wis. 396, 400-01, 59 N.W.2d 448, 450-51 (1953). We recall here our statement that LIRC's findings of fact must be affirmed if supported by substantial evidence. *See West Bend Co.*, 149 Wis. 2d at 117-18, 438 N.W.2d at 827. The substantial evidence standard is met when, upon examining the entire record, the evidence, including any inferences therefrom, is found to be such that a reasonable person might have reached the decision. *Muskego-Norway*, 35 Wis. 2d at 558, 151 N.W.2d at 626. We must search the record to locate substantial evidence which supports LIRC's decision. *Vande Zande v. DILHR*, 70 Wis. 2d 1086, 1097, 236 N.W.2d 255, 260 (1975).

Our independent review of the record leads us to the conclusion that there is substantial evidence to support LIRC's additional findings. Doman testified that he was displeased with Hoell's job performance. This is corroborated by the fact that Doman removed Hoell from special project assignments and hired another individual for special projects *prior to* Hoell's pregnancy announcement. Doman also testified that Hoell was unable to effectively supervise and that there was extreme tension in the accounting department. Employees in the department verified that they regularly took their questions to Doman instead of Hoell. One month prior to Hoell's termination, Doman held a meeting with the accounting department in an

attempt to resolve the tension and indicated that changes would have to be made if relations between Hoell and her subordinates did not improve. Further, even though Hoell informed Narada of her pregnancy in June, she was not terminated until October, which was the busiest time of the year in the accounting department.[5]

Because we conclude that substantial evidence in the record supports LIRC's findings that other nondiscriminatory factors motivated Narada's decision to terminate Hoell, we conclude that LIRC properly determined this to be a mixed motive case. Further, we conclude that LIRC properly limited the remedies available to Hoell pursuant to the mixed motive test adopted here for purposes of claims arising out of the WFEA.

*By the Court.*—Order affirmed.

---

[5] We note that the chairperson of the commission deemed the evidence to be so overwhelming that she dissented from the majority opinion and concluded that Hoell's pregnancy was not a factor at all in her discharge.